IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| EARNEST EUGENE PERRY, #615950 | § | |
| VS. | § | CIVIL ACTION NO. 6:05cv283 |
| JERRY BROADWAY, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Ernest Eugene Perry, an inmate confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on July 29, 2005. The Plaintiff primarily complained that he was the victim of excessive use of force. On November 22, 2005, the Court conducted a preliminary evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The Plaintiff testified as to the factual basis of his claims. Regional Grievance Officer Edith Petty, Assistant Warden Ricky Thompson and Nurse Barbara Hughes were present during the hearing in the event the Court wanted testimony about prison policies or information contained in the Plaintiff's records.

The Plaintiff testified that the use of force incident occurred in the Close Custody section of the Michael Unit on April 19, 2005. The inmates were called out to go to breakfast. The Plaintiff came out of his cell and was talking to Officer Guinn. Officer Broadway observed the Plaintiff talking and ordered him to go back into his cell. The Plaintiff did not comply with the order. He

placed his hands on the guardrail and informed Officer Broadway that he was going to eat. Officer Broadway slammed the Plaintiff's door open and told him to go back into his cell. The Plaintiff turned and walked away from Officer Broadway and started down the stairs. The Plaintiff took one step down the stairs, which prompted Officer Broadway to reach over the rail, grab the Plaintiff's left arm and spray him in the face with pepper spray. The Plaintiff testified that he then laid down on the run.

A sergeant arrived on the scene and transported the Plaintiff to the infirmary. The Plaintiff noted that he has asthma and that he could not talk. Nurse Connell took the Plaintiff's blood pressure and gave officers the okay to place him in Pre-Hearing Detention. The Plaintiff noted that he was having trouble breathing. Nurse Connell told him that the pepper spray was designed to do exactly what it did. She did not provide any other medical care. The Plaintiff stated that his eyes remained red. He submitted a sick call request because he continued to have problems with his eyes. Nurse Bussey gave him eye drops, but that did not help much. He submitted another sick call request and received antibiotics for his eyes. The drugs helped at first, but then he started having problems with his eyes again.

The Plaintiff testified that he sued Officers Brown, Adebokum and Guinn since they saw the entire incident and then wrote their witness statements in a way that supported Officer Broadway. The Plaintiff noted that he received a disciplinary case for assaulting Officer Broadway. He purportedly shoved passed by Officer Broadway. The Plaintiff testified that a videotape shows that he did not assault Officer Broadway. His punishment included fifteen days solitary confinement, 45 days cell and commissary restrictions and the loss of one day good time. He appealed the decision, but the disciplinary case has not been overturned. The Plaintiff sued Warden Pratt for

upholding the disciplinary case. Warden Thompson also upheld Officer Broadway's actions. Both wardens denied his Step 1 grievance. He sued Assistant Regional Director Odom because she denied his Step 2 grievance. Roddey also signed a Step 2 grievance. He sued Unit Grievance Investigator Tammy Different because she investigated his grievances and did not find in his favor.

The Plaintiff testified that he has sued Officer Broadway for the additional reason that he confiscated his property after the use of force incident. He added that the only person he sued for confiscating his property was Officer Broadway.

Warden Thompson testified under oath that videotapes are made of activities in Close Custody. The tapes are reused after fifteen days if they are not pulled for some reason or another. He testified that inmates are not allowed to disobey orders. Depending on the circumstances, officers may used force when an inmate disobeys orders.

Nurse Barbara Hughes testified under oath from the Plaintiff's medical records. It is noted that the Plaintiff testified that the Court could review his records. The medical records reveal that a Use of Force and Pre-Hearing Detention Physical was conducted and that the Plaintiff did not suffer any injuries. It was noted that a chemical agent was used, but no respiratory distress was noted. Nurse Hughes testified that inmates who have been sprayed with a chemical agent are instructed to take a shower when they arrive at Pre-Hearing Detention. She often provides a wet towel for their eyes. She did not notice any on-going complaints from the Plaintiff about his eyes.

The Plaintiff testified that he sued Nurse Connell for providing inadequate medical care. He noted that he did not wash thoroughly. The sergeant told him that he should wash the chemicals off with cold water. The water was hot, and he feared he would aggravate the problem. Nurse Hughes testified that she had not heard anything about the temperature of the water making any difference.

The Plaintiff's primary claim concerns allegations of excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Court additionally emphasized that a use of force claim has subjective and objective components. In other words, a court must consider whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* at 8.

Several factors are important in making an assessment of the situation. The claimant must allege and prove there was an "unnecessary and wanton infliction of pain." In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.* The Fifth Circuit has instructed the courts in this circuit to consider these five factors in analyzing excessive use of force claims. *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992); *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). The Supreme Court additionally emphasized that the concept of what constitutes cruel and unusual punishment "draws its meaning from the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. at 8 (citations omitted).

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10. The Fifth Circuit has interpreted this provision to mean there must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993).

The Prison Litigation Reform Act of 1996 placed further limitations on the availability of relief. 42 U.S.C. § 1997e(e) precludes suits by prisoners for mental or emotional injury without a prior showing of a physical injury. In *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997), the Fifth Circuit analyzed § 1997e(e) in light of recent case law. The Fifth Circuit noted that there must be a "qualifying physical injury" for a prisoner to proceed on his civil rights claims. *Id.* at 193. Moreover, the physical injury must be more than just a *de minimis* physical injury. *Id.* The Fifth Circuit finally held that a sore, bruised ear lasting for three days was *de minimis* and insufficient to provide a basis for a meritorious civil rights lawsuit.

The Fifth Circuit considered the use of chemical agents, such as pepper spray, in the context of excessive use of force claims in *Bladwin v. Stalder*, 137 F.3d 836 (5th Cir. 1998). The case involved prison officials using pepper mace to quell a disturbance on a bus. The trial court found that the inmate suffered only minor injuries due to the use of pepper spray; nonetheless, the trial court found that officer's actions violated the Eighth Amendment. The Fifth Circuit reversed. Using the basic *Hudson* standards, the Fifth Circuit held that the trial court erred in finding that the two second use of mace, including not allowing immediate washing, was not a *good faith effort* to

maintain or restore discipline. *Id.* at 841. The Fifth Circuit found that there was no evidence that the officer acted with a malicious or sadistic intent. More recently, the Fifth Circuit again discussed the use of a chemical agent against an inmate in *Davis v. Cannon*, 91 Fed. Appx. 327 (5th Cir. 2004). The Fifth Circuit held that the use of the chemical agent after the inmate refused to obey orders, which did not result in any physical injuries, was not excessive. *Id.* at 329 (citing *Baldwin*, 137 F.3d at 840-41). The Fifth Circuit further noted that the failure of other officers to intervene and protect the inmate did not amount to a civil rights violation. *Id.*

In the present case, the Plaintiff repeatedly disobeyed orders to return to his cell. He may believe that the orders were wrong; nonetheless, his disobedience constituted a breach of security and was an invitation to use force against him. Officer Broadway's action of grabbing the Plaintiff's left arm and spraying him with a chemical agent was a somewhat minor response in order to regain control over him. The incident ended when the Plaintiff complied with orders to lie on the ground. The facts attributed to Officer Broadway do not give rise to an inference that he acted maliciously and sadistically for the very purpose of causing harm. Instead, they give rise to an inference that Officer Broadway engaged in a good faith effort to regain control over a disobedient inmate. Officer Broadway's actions, coupled with the limited nature of the Plaintiff's injuries, do not give rise to an inference that Officer Broadway used excessive force.

The Plaintiff's second claim concerns the disciplinary charges filed against him. He disputes the allegation that he assaulted Officer Broadway. He testified that his punishment included the loss of good time and that he has been unsuccessful in his efforts to challenge the disciplinary case. The Plaintiff may not, however, assert a due process claim in a 42 U.S.C. § 1983 action unless he first shows that the result of the disciplinary case was reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's

6

issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Plaintiff has not shown that he has been able to get his disciplinary case reversed, expunged or otherwise declared invalid, thus he may not bring a civil rights lawsuit about the disciplinary case. He likewise may not bring claims against Officers Brown, Adebokum and Guinn regarding their roles in the disciplinary proceedings.

The Plaintiff sued Officer Broadway for the additional reason that he confiscated the Plaintiff's property after the use of force incident. A state actor's negligent or intentional deprivation of a plaintiff's property does not result in a violation of procedural due process rights if there exists an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional conduct); *Parratt v. Taylor*, 451 U.S. 527, 535-55 (1981) (negligent conduct); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). The Texas court system provides an adequate postdeprivation remedy for the taking of any property. *See Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir 1986). Moreover, the Texas state administrative and judicial systems provide an adequate state post-deprivation remedy for property taken from prisoners. *See* Tex. Gov. Code § 501.007. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), *cert. denied*, 464 U.S. 897 (1983); *Loftin v. Thomas*, 681 F.2d 364, 365 (5th Cir. 1982). Because Texas has adequate post-deprivation remedies, a prisoner does not have a basis for a § 1983 claim for the confiscation of his property and such claims should be dismissed as frivolous. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994).

The Plaintiff also complained about the medical care provided by Nurse Connell after the use of force incident. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). "[I]nadequate

7

medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoners's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999) (internal quotation marks omitted). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). A disagreement with the treatment provided by a doctor does not rise to the level of a constitutional violation. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

8

In the present case, Nurse Connell examined the Plaintiff after the use of force incident. She took his blood pressure and noted that she did not observe any respiratory distress. She approved him for placement in Pre-Hearing Detention. She did not provide any specific care for his eyes or asthma. Nurse Hughes testified that the normal procedure that follows is to take an inmate to the shower to wash off any residual chemicals on the inmate's body. The Plaintiff acknowledged that he was taken to the shower to wash off the chemicals. He did not thoroughly wash off the chemicals since the sergeant told him that he should use cold water. The Plaintiff testified that the water was hot and he feared he would aggravate the problem by showering with hot water. Nurse Hughes testified that she had not heard that it made any difference whether an inmate used hot or cold water to wash off the chemicals. In light of the circumstances, the actions attributed to Nurse Connell do not give rise to an inference that she knew of and disregarded a substantial risk to the Plaintiff's health. The facts attributed to her do not rise to the level of deliberate indifference. Moreover, the Plaintiff testified that he was not even sure whether the problem was serious at the time. He did not seek medical care until his eye problems persisted. He then submitted a sick call request and received eye drops. He subsequently received additional medication. The facts as alleged do not give rise to an inference that he suffered substantial harm due to a delay in receiving medical care and such delay was the product of deliberate indifference. The Plaintiff has not alleged facts supporting a deliberate indifference claim against Nurse Connell.

The Plaintiff also sued Wardens Pratt and Thompson, Assistant Regional Director Odom, Unit Grievance Investigator Tammy Different and Roddey for their roles in denying his grievances. Inmates must exhaust their administrative remedies, but they do not have a basis for a civil rights lawsuit because of grievance procedures. 42 U.S.C. § 1997e(b). Suing an official because he denied the prisoner's grievance does not state a cognizable § 1983 claim. *Jackson v. Cain*, 864 F.2d 1235,

1251 (5th Cir. 1989); *Thomas v. Lensing*, No. 01-30658 (5th Cir. Dec. 11, 2001).  In conclusion, none of the Plaintiff's claims state a claim upon which relief may be granted.  They are frivolous in that they lack any basis in law and fact.  The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).  It is accordingly

    **ORDERED** that the cause of action is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  It is further

    **ORDERED** that all claims by either party not previously ruled on are **DENIED**.

    So **ORDERED** and **SIGNED** this  1   day of  **December, 2005.**

                                        JUDITH K. GUTHRIE
                                        UNITED STATES MAGISTRATE JUDGE